## COMMONWEALTH *vs.* LAWRENCE E. BLAND, JR.

No. 98-P-867.

Barnstable. November 17, 1999. - February 29, 2000.

Present: JACOBS, SMITH, & GREENBERG, JJ.

*Practice, Criminal,* Sentence. *Constitutional Law,* Sentence. *Home Invasion.*

In the circumstances of a criminal defendant's convictions of crimes relating to his robbing elderly persons after breaking and entering their homes, the sentencing judge's remarks, recognizing the vulnerability to home invasion of such elderly victims and sending a message of general deterrence that such conduct would not be tolerated, did not invalidate the sentences imposed. [668-670]

INDICTMENTS found and returned in the Superior Court Department on September 16, 1991.

A motion to revise and revoke sentence, filed on March 23, 1992, was heard by *Gerald F. O'Neill, Jr.,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Linda A. Wagner,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. Following his convictions, in 1992, of several crimes relating to his robbing elderly persons after breaking and entering their dwellings, the defendant filed a timely motion to revoke and revise his sentences.[1] Some six years later,[2] the trial

---

[1]The defendant received a base sentence of thirty to forty years on an indictment of unarmed robbery of a person over sixty-five years of age and several similar and lesser sentences concurrent with that base sentence on various breaking and entering indictments. Certain other related convictions were filed with the defendant's consent.

[2]The record does not reveal whether the motion was pressed earlier. Although there are time limitations for filing a motion to "revise or revoke" under Mass.R.Crim.P. 29, 378 Mass. 899 (1979), there is no defined limitation with regard to the time within which the motion must be heard and decided. *Commonwealth* v. *McGuinness,* 421 Mass. 472, 473 n.2 (1995). Compare

judge conducted a hearing and denied that motion, issuing a comprehensive memorandum in which he addressed and rejected the grounds upon which the defendant relied in seeking to reduce his base prison sentence of thirty to forty years. In addition the judge set forth his reasons for the sentence, "certainly the longest that [he had] imposed on similar crimes." He wrote:

> "At the time this sentence was fashioned, the Court considered three factors: first, the defendant's rather extensive criminal record; second, that these offenses present a particularly serious threat in Barnstable County where demographics indicate that elderly people living alone in relative isolation are easy targets for home invasions; and, third, the effect upon these elderly victims when this husky young male came upon them in their homes in the night. Although the defendant is technically correct that there was no physical touching, the psychological effects of these home invasions had to be devastating. For all of these reasons, the Court believes that the sentences, although in excess of the guidelines, were appropriate for the conduct of this defendant at that time.

> "The Court finds no evidence that justice was not done at the time of sentencing. There was a clear message that this type of conduct would not be tolerated in this county."

The defendant appeals, claiming that the judge abused his discretion by relying on "invalid factors" in originally imposing the sentence. We affirm.

We face the unusual circumstance of an appeal, based not on the grounds relied on in support of the motion, all of which

---

*Commonwealth* v. *Layne*, 386 Mass. 291, 296 (1982) ("constru[ing] rule 29(a) to preclude consideration of a motion to revise and revoke that has been filed within sixty days after the disposition of an appeal that has lain dormant . . . for the unreasonable period of more than nine years"); *Commonwealth* v. *Barclay*, 424 Mass. 377, 380 (1997) (six years an unreasonable time for consideration of motion to revise or revoke). Here, the hearing was preceded by a dismissal of an appeal of the sentences by the Appellate Division of the Superior Court in 1993 and a decision of this court in an unpublished memorandum entered in 1996 affirming all of the convictions except for two of the breaking and entering convictions which were reversed and remanded for resentencing as daytime crimes. See *Commonwealth* v. *Bland*, 40 Mass. App. Ct. 1110 (1996).

properly were rejected,[3] but upon information supplied by the judge as to the rationale for his sentence. Consequently, the claim of illegal sentencing might more correctly be raised by a motion for postconviction relief pursuant to Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979). However, because the issue has constitutional dimension, see *Commonwealth* v. *Bianco*, 390 Mass. 254, 259 (1983), and, in the interest of judicial economy, compare *Commonwealth* v. *Preziosi*, 399 Mass. 748, 750 (1987), we consider the merits of the appeal.

The defendant argues that the judge's reference to "demographics" runs afoul of the rule that judicial reliance in sentencing on information which has no basis in the evidence or in materials produced at the sentencing hearing requires remand for resentencing. See *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 221 (1976); *Commonwealth* v. *Lebron*, 23 Mass. App. Ct. 970, 972 (1987). Compare *Commonwealth* v. *White*, ante 658, 663-664 (2000). At the defendant's trial, evidence was introduced of his breaking and entering several homes after ripping out exterior telephone wires, and then terrorizing and robbing the elderly occupants. At the sentencing hearing, the prosecutor spoke of the "frailty" of the victims and the seriousness of their being subjected to home invasions at their ages. The point essentially was repeated at the revocation hearing by prosecution references to the crimes being "against the elderly, a very vulnerable sector," and "a very vulnerable portion of society." Given the trial evidence, the prosecutor's statements, and the judge's prefatory reference to "these offenses," his allusion to "elderly people" clearly appears to be a description of the victims of the defendant's crimes. Even if we assume that the judge viewed certain "demographics" with which he was familiar as somehow "indicat[ing] that elderly people living alone in relative isolation are easy targets for home invasions," he was merely stating the obvious. Reliance on such a truism in sentencing is not error.

As is more likely, the judge's reference to "demographics" may have reflected his belief that compared with other places, Barnstable County had a greater proportion of "elderly people living alone in relative isolation." This view coincides with the

---

[3]The original grounds were to the effect that the defendant's criminal activity was caused by his cocaine addiction, that no victim was physically harmed, that the sentences were outside certain guidelines, and that the defendant's postconviction activities should be considered.

judge's characterization of the sentences as constituting "a clear message that this type of conduct would not be tolerated in this county," and leads the defendant to argue, relying on *Commonwealth* v. *Howard*, 42 Mass. App. Ct. 322 (1997), that the judge improperly targeted his deterrent message toward Barnstable County. In *Commonwealth* v. *Howard, supra* at 329, this court ordered resentencing of a defendant convicted of forcible rape of a child where the sentencing judge indicated in a memorandum that one of the reasons for a "sentence above the guidelines" was for the purpose of "deterrence in the Athol area." *Id.* at 326. He stated further that "[t]he Athol area seems to have more than its share of child abuse cases and a large number of young shiftless men who have little or no regard for . . . others." *Ibid.* Stating that it was the judge's purpose "to target a message to residents of a particular town for the object of deterrence," *id.* at 327, this court noted that "target deterrence" is not supported by the case law and that in any event there was no support for the judge's assertion that Athol had "more than its share of child abuse cases." *Id.* at 328. Those circumstances are far removed from this case in which no view of the judge's statement supports the conclusion that he believed that Barnstable County experienced a disproportionate number of home invasion crimes or that he was tailoring his message to any indigenous population. Instead, he recognized the vulnerability to home invasion of a segment of the county's population and delivered a deterrent message, not to an identifiable or targeted group, but to an undifferentiated general audience.

In broad terms, general deterrence, as distinguished from special deterrence,[4] has been described as "justif[ying] sentences in the name of discouraging the general public from recourse to crime." Campbell, Law of Sentencing 25 (2d ed. 1991). Although some jurisdictions reject general deterrence as a sentencing objective, especially when used to enhance sentences beyond guidelines, see *Commonwealth* v. *Howard, supra* at 328 n.3, it is recognized as a sentencing goal in our case law, as conceded by the defendant. *Commonwealth* v. *Goodwin*, 414

---

[4]The difference between general and special deterrence has been dramatically described by the observation that "the former operates through remembering the lash on another's back, and the latter through remembering it on one's own." Fitzmaurice & Pease, The Psychology of Judicial Sentencing 48-49 (1986).

Mass. 88, 92 (1993).[5] Accordingly, the inclusion by the judge of a message of general deterrence as one of the factors in his sentencing rationale does not invalidate the sentence.

*Order denying motion to revoke*
*and revise sentence affirmed.*

---

[5]As noted in *Commonwealth* v. *Howard, supra* at 327 n.2, the Massachusetts Sentencing Commission in its Report to the General Court (April 10, 1996), pursuant to G. L. c. 211E, does not include deterrence in its list of *nonexclusive* mitigating and aggravating factors in just punishment analysis. See *Massachusetts Sentencing Commission, Sentencing Guidelines* at 17 and attachment D (February, 1998). The Report at 4, however, also states that "[b]y emphasizing punishment as the primary purpose of sentencing, the commission does not minimize the importance of other purposes such as deterrence, rehabilitation, and incapacitation."